IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Herbert English, | ) | C/A No. 0:12-2910-RMG-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Michael McCall, *Warden*, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Herbert English ("English"), a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's supplemental motion for summary judgment. (ECF No. 51.) The respondent initially filed a motion for summary judgment that addressed Grounds One through Four in English's Petition. (ECF No. 23.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), English was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 25.) English responded in opposition. (ECF No. 41.) By Order issued October 9, 2013, the court directed the respondent to supplement his return and memorandum of law to address Grounds Five through Seven of English's Petition. (ECF No. 49.) The respondent complied. (ECF Nos. 51 & 52.) English was granted additional time to supplement his response in opposition to the respondent's motion for summary judgment, but elected not to do so. Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's supplemental motion for summary judgment should be granted and English's Petition denied.

Page 1 of 25

## BACKGROUND

English was indicted in January 2006 in Lexington County for armed robbery and possession of a weapon during a violent crime (06-GS-32-358 & -360). (App. at 271-72, 275-76, ECF No. 24-2 at 121-22, 125-26.) English was represented by Arie D. Bax and Sarah Hahn, Esquires, and on September 11, 2006 was tried by a jury and found guilty as charged. (App. at 261, ECF No. 24-2 at 111.) The circuit court sentenced English to twenty-five years' imprisonment for armed robbery and five years' imprisonment for possession of a weapon during a violent crime, both sentences to be served concurrently. (App. at 268-69, ECF No. 24-2 at 118-19.)

English timely appealed and was represented by Wanda H. Carter, Esquire, of the South Carolina Office of Appellate Defense, who filed an <u>Anders</u>[1] brief on English's behalf that raised the following issue:

> The lower court erred in denying appellant's directed verdict motion on a sufficiency ground because the victim failed to identify appellant as one of the perpetrators in the case.

(ECF No. 24-4 at 4.) English filed a *pro se* response to the <u>Anders</u> brief in which he raised the same issue. (ECF No. 24-5 at 4.) On August 11, 2008, the South Carolina Court of Appeals issued an order dismissing English's appeal. (<u>State v. English</u>, Op. No. 08-UP-471 (S.C. Ct. App. Aug. 11, 2008); ECF No. 24-6.) The remittitur was issued April 27, 2008. (ECF No. 24-7.)

English filed a *pro se* application for post-conviction relief ("PCR") on November 10, 2008 in which he raised the following issues:

---

[1] <u>Anders v. California</u>, 386 U.S. 738 (1967). <u>Anders</u> requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. <u>Anders</u>, 386 U.S. at 744.



1.     Direct Verdict:  The lower court erred in denying my direct verdict motion on sufficiency of evidence.

2.     Impeachment:  Stat[e]ments of [co-defendant] were not impeach[ed] after making several false statements.

3.     Evidence:  State did not have ample or sufficient or any evidence on me (Herbert English).

(English v. State of South Carolina, 08-CP-32-4675; App. at 278-83, ECF No. 24-2 at 128-33.)  The State filed a return.  (App. at 284-88, ECF No. 24-2 at 134-38.)  On May 18, 2010, the PCR court held an evidentiary hearing at which English appeared and testified and was represented by Bryan Jeffries, Esquire.  By order filed July 24, 2010, the PCR judge denied and dismissed with prejudice English's PCR application.  (App. at 361-75, ECF No. 24-3 at 57-69.)

English appealed.  In his PCR appeal, English was represented by Kathrine H. Hudgins, Esquire, who filed a Johnson[2] petition on English's behalf that presented the following issue:

Did the PCR judge err in refusing to find counsel ineffective for advising petitioner not to testify on his own behalf based on the fact that petitioner had pending charges in Florida?

(ECF No. 24-8 at 3.)  On July 16, 2012, the South Carolina Supreme Court denied English's petition for a writ of certiorari.  (ECF No. 24-9.)  The remittitur was issued August 1, 2012.  (ECF No. 24-10.)  This action followed.

**FEDERAL HABEAS ISSUES**

English raises the following issues in his federal petition for a writ of habeas corpus:

**Ground One:**  The lower court erred in denying direct verdict motion on the sufficiency of the victim failed to identify Petitioner as one of the perpetrators in the case.

---

[2] Johnson v. State, 364 S.E.2d 201 (S.C. 1988) (applying the factors in Anders v. California, 386 U.S. 738 (1967) to post-conviction appeals).



**Supporting Facts:** Petitioner factually shows that the appeals court failed to correct the court the laws in error as In re Winship, 397 U.S. 358 (1970), whereas, the trial court erroneously denied Petitioner['s] motion for direct verdict because the law of the U.S. Supreme Court is that the Due Process Clause states the prosecution must meet the burden to prove each and every element of the crime charged beyond a reasonable doubt, and here in this matter/issue the trial court did not give a reason as to why the motion was denied and no laws, etc.

**Ground Two:** Ineffective assistance of trial counsel, etc. Counsel failed to impeach co-defendants after them making false statements several times.
**Supporting Facts:** Petitioner shows that the trial counsel failed to impeach the co-defendants during trial and by the trial record the Court for Appeal failed to correct law errors based upon the right to confront his accusers and any testimonies proffered against him, . . . The S.C. Supreme Court failed to see that it failed to apply the U.S. Supreme Court precedents in this particular ground/issue, etc[.]

**Ground Three:** Trial counsel failed to consult with Petitioner to prepare him for trial and fully advise him of his rights to a fair trial.
**Supporting Facts:** Petitioner shows that the court failed to see the records that existed to proffer the proof that trial counsel visited with Petitioner twice and not as he should have, the investigator never visited with him and it totally goes against the laws that the US Supr[e]me Court has settled to guarantee that Petitioner receive effective assistance from counsel to his case, the court failed to correct this matter of law on appeal also[.]

**Ground Four:** Petitioner shows that the appeal court did not correct the errors of law in this ground that the State did not have ample or sufficient evidence to convict Petitioner for any crimes.
**Supporting Facts:** Petitioner explicitly shows that the SC Supreme Court failed to correct law in this ground based upon the facts that record proffered proof that the State's case was not proved by any actually evidence by the State and as appeal court denied relief and failed to correct law that is in error to this case, no identification, no gun that were alleged to be used to commit the crime, and nor did the Petitioner give any indications that he was with the co-defendants when the crime happen, Petitioner is actually innocence as claimed.

**Ground Five:** Failed to make a timely objection during trial entry to video and gun into evidence:
**Supporting Facts:** Petitioner shows that the appeal court failed to correct this error of law in Ground Five because the court see that the shotgun was not relevant to the trial and the video was inculpatory due to the facts that the victim did not identify the Petitioner as the perpetrator of the crime committed against the victim. This State has the rule as the best evidence rule and the trial counsel failed to be aware of this case law that is based upon the U.S. Constitutions, the Petitioner shows that he was extremely prejudiced against when the trial counsel failed to placed an objections to



this evidence being introduced during trial, see 5th, 6th, and 14th Amends of the US Const.

**Ground Six:**  Failure to address exculpatory note:
**Supporting Facts:**  Petitioner shows that the appeal court failed to correct this error of law in Ground Six because the court allowed non legal substances as characterizing the note being wrote out of fear, this Ground being raised and was not examined by the correct legal analysis did a gravely harm to the petitioner's due process rights in receiving a fair review so that the state appeal court could have corrected error of law that automatically made the standards of stare decisis be failed, the bedrock procedural that compels the court to give the Petitioner a review to his initial collateral proceedings pursuant fundamental fairness as this was not done in Petitioner's case and as cited in this particular Ground, as the SC Supreme Court had the [o]pportunities to correct errors of laws and did not leaves this court the only option but to correct and remand.

**Ground Seven:**  Erroneously advisement to not testify at trial
**Supporting Facts:**  Petitioner will show that the appeals court did not correct error of law in this Ground when it had a chance when before the court as it did rule and let stand accordingly to the mandates under the Dempsey, Whitehead, and McLaughlin Court, as this did deprived the Petitioner of a correct review of law that is effective to his case.  Pursuant to the Boyde v. Cal. Court and Adams v. Aiken Court, it[']s established that in all case violation to due process in reviewing a fair trial accordingly to the bedrock procedures, the respectful courts failed to find counsel[']s ineffective assistance and the errors done in the appellate court stages are the one that amounts to the extremely prejudiced standards, violation of US Supreme Court law.

(Pet, ECF No. 1) (errors in original).

## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary



judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56©), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## B.    Habeas Corpus Standard of Review

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was



based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also Harrington v. Richter, 131 S. Ct. 770, 785 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Id. at 785. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 786. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a



" 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies.  28 U.S.C. § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.").  To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim."  Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted).  Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991).  For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.



D.    **Summary Judgment Motion**[3]

1.    **South Carolina Supreme Court**

The respondent argues, and the court agrees, that to the extent that English attempts to raise claims against the South Carolina Supreme Court in Grounds Two, Three, Five, Six, and Seven by arguing that the South Carolina Supreme Court failed to correct his assertions of error, these claims are not cognizable as the state Supreme Court denied certiorari review, which is discretionary.  <u>See</u> Rule 242, SCACR (explaining that "[a] writ of certiorari is not a matter of right, but of sound judicial discretion, and will be granted only where there are special and important reasons."); Rule 243, SCACR (Certiorari to Review Post-Conviction Relief Actions).  English has not alleged or demonstrated that in reaching that decision the state Supreme Court unreasonably applied clearly established federal law as decided by the United States Supreme Court or based its decision on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[4]  <u>See</u> 28 U.S.C. § 2254(d)(1), (2).

2.    **Directed Verdict**

To the extent that English claims in Grounds One and Four that the trial court erred in refusing to grant a directed verdict, such a claim is cognizable for federal habeas review.  During the trial, trial counsel moved for a directed verdict arguing that counsel "[does not] believe the State has

---

[3] Although difficult to discern at times, in considering this motion, the Court has broadly construed English's grounds in his Petition to the extent that they may be read to raise cognizable claims.

[4] To the extent that these grounds, as well as Ground Four, allege that the state Supreme Court failed to correct his assertions of error regarding direct appeal issues, the court observes that the Court of Appeals dismissed his direct appeal following <u>Anders</u> review.  A petition for a writ of certiorari was not filed with the South Carolina Supreme Court; however, in <u>State v. Lyles</u>, 673 S.E.2d 811 (S.C. 2009) the state Supreme Court explained that it will not entertain such petitions.



presented ample evidence or sufficient evidence to entitle the jury to find that [English] is guilty under the facts," which the trial court denied.  (App. at 212, ECF No. 24-2 at 62.)  Trial counsel later renewed this motion, and the trial court again denied it.  (App. at 258, ECF No. 24-2 at 108.)  In Ground Two, as argued in his direct appeal, English appears to challenge the sufficiency of the evidence because the victim failed to identify English as one of the perpetrators in the case.  English also generally reiterates in Ground Four that there was not sufficient evidence to convict him and alleges that he is innocent of the crimes.

Claims of sufficiency of evidence are cognizable on collateral review.  However, "a federal court's review of such claims is 'sharply limited.' "  Wilson v. Greene, 155 F.3d 396, 405 (4th Cir. 1998) (quoting Wright v. West, 505 U.S. 277, 296 (1992)).  "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review."  Wilson, 155 F.3d at 405-06 (citing Wright, 505 U.S. at 292).

When reviewing the sufficiency of the evidence to support a conviction, the critical inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also McDaniel v. Brown, 130 S. Ct. 665, 673 (2010) (*per curiam*) ("Jackson requires a reviewing court to review the evidence 'in the light most favorable to the prosecution.' ") (quoting Jackson, 443 U.S. at 319).  Where there are conflicting inferences, the reviewing court must presume " 'that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' "  McDaniel, 130 S. Ct. at 673  (quoting Jackson, 443 U.S. at 326).  In evaluating a Jackson sufficiency of the evidence claim in a federal habeas petition, the relevant inquiry is "whether a state court determination that the

evidence was sufficient to support a conviction was an objectively unreasonable application of [the standard enunciated in] Jackson." Williams v. Ozmint, 494 F.3d 478, 489 (4th Cir. 2007) (internal quotations and citations omitted) (alterations in original); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam); McDaniel, 130 S. Ct. at 673-74 (evaluating a Jackson claim in accordance with the standard of review set forth in § 2254(d)(1)).

As stated above, the trial court denied English's motions for a directed verdict, thus finding sufficient evidence had been presented. The South Carolina Court of Appeals dismissed English's appeal following Anders review. Although the state courts did not explain their reasoning, as pointed out by the Harrington Court, review under § 2254 does not require a statement of reasons. Harrington v. Richter, 131 S. Ct. 770, 784 (2011). Therefore, English must show that there was no reasonable basis for the state court to deny relief, id., and the court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 786; 28 U.S.C. § 2254(d).

Upon review of the record, viewing the evidence in the light most favorable to the prosecution and resolving any conflicting inferences in favor of the prosecution, the court concludes that English cannot demonstrate that there was insufficient evidence at trial from which any rational trier of fact could have found that English was guilty of armed robbery and possession of a weapon during a violent crime as defined under state law beyond a reasonable doubt. See Jackson, 443 U.S. at 319; see also McDaniel, 130 S. Ct. at 673-74; S.C. Code Ann. §§ 16-11-330(A), 16-23-490. The evidence supporting conviction included (1) testimony that the convenience store in question was robbed at gunpoint of a quantity of cash from the person or in the presence of the store clerk on duty;

(2) testimony from all four co-defendants as to their participation as well as English's participation in the armed robbery of the convenience store, including testimony that English was carrying a nine-millimeter pistol during the robbery; (3) introduction of a shotgun used by a co-defendant during the robbery and a video recording of the robbery; and (4) testimony that English split the proceeds with one of the co-defendants. Although English points out that the store clerk was unable to identify any of the perpetrators, that the co-defendants' credibility should be questioned, that the weapon English allegedly used was not produced, and that English did not indicate he was with the co-defendants during the commission of the crime, the relevant question is whether viewing the evidence presented in the light most favorable to the prosecution "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. The court finds that English has failed to demonstrate that the state court's decision was so fundamentally unfair that it resulted in a denial of due process. See 28 U.S.C. § 2254(a) (stating that a writ of habeas corpus is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"). Therefore, English has failed to show that there was no reasonable basis for the state appellate court's dismissal of his appeal following Anders review and the trial court's denial of English's motions for a directed verdict because he cannot that those decisions were an "objectively unreasonable application of [the standard enunciated in] Jackson."[5]

---

[5] English also appears to have raised allegations to the PCR court concerning the trial court's denial of his motion for a directed verdict, which found that "such a claim is a direct appeal issue and beyond the purview of this Court." (App. at 373, ECF No. 24-3 at 67.) To the extent that Grounds One and Four can be construed to challenge the PCR court's determination, the court finds that English has failed to present a cognizable federal habeas corpus claim. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (stating that "it is not the province of a federal habeas corpus court to re-examine state-court determinations of state-law questions"); see also Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review), cited in Wright v. Angelone, 151 F.3d 151 (4th Cir. 1998).



<u>Williams</u>, 494 F.3d at 489; <u>see also</u> 28 U.S.C. § 2254(d)(1).  As such, English is not entitled to habeas relief on these bases.

### 3.    Ineffective Assistance of Trial Counsel Claims

English also raises several claims of ineffective assistance of trial counsel in his Petition. Specifically, English appears to argue that trial counsel was ineffective in (1) failing to impeach English's co-defendants after they purportedly made false statements (Ground Two);[6] (2) failing to consult with English to prepare him for trial and fully advise him of his rights to a fair trial (Ground Three); (3) failing to timely object to the entry of the video recording and shotgun into evidence during trial (Ground Five); (4) failing to appropriately address an exculpatory note (Ground Six); and (5) erroneously advising English not to testify (Ground Seven).  These grounds all appear to have been raised to and ruled on by the PCR court, certiorari review of which was denied by the South Carolina Supreme Court following <u>Johnson</u> review.  Therefore, the court will consider the merits of each of these claims.

---

[6] To the extent that English is attempting to raise a freestanding confrontation clause claim in Ground Two, such a claim is procedurally barred as it was not raised at trial and therefore was not preserved under state procedural rules for <u>Anders</u> appellate review during English's direct appeal. <u>See</u> <u>State v. Owens</u>, 664 S.E.2d 80 (S.C. 2008) (holding that the appellant's confrontation clause challenge was not preserved for appellate review where no confrontation clause challenge was raised at trial); <u>State v. Williams</u>, 401 S.E.2d 168 (S.C. 1991) (stating that generally issues not raised to and ruled on by the trial court are not preserved for appellate review); <u>see</u> <u>also</u> <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971) (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding"); <u>Longworth</u>, 377 F.3d at 448 (stating to exhaust his available state court remedies, a petitioner must "fairly present[ ] to the state court both the operative facts and the controlling legal principles associated with each claim," *i.e.*, "the ground must be presented face-up and squarely") (internal quotation marks and citation omitted).



### a.    Ineffective Assistance of Counsel Generally

A defendant has a constitutional right to the effective assistance of counsel.  To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution.  With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  Prejudice may be presumed when (1) a defendant is completely denied counsel at a critical stage of his trial, (2) counsel "entirely fails to subject the prosecution's case to a meaningful adversarial testing," or (3) "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." United States v. Cronic, 466 U.S. 648, 659 (1984).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington v. Richter, 131 S. Ct. 770, 788 (2011).  The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  Id. (quoting Padilla v.



Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (indicating that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court). Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

### b.    PCR Court Testimony and Findings

In support of these claims, English testified at the PCR hearing that he met once with trial counsel Bax one or two weeks before trial. English stated that Bax was the third attorney appointed to represent him. During that meeting, English stated that Bax indicated that as an African-American, English "[didn't] stand a chance" in Lexington County, that there was a video recording English needed to see, and that an investigator would come and speak with him. (App. at 301, ECF No. 24-2 at 151.) English stated that Bax showed him some still photographs, but that he never saw the video recording. English also testified that Bax advised him that it would be unwise to testify

because the prosecution would bring up his pending charges in Florida, which included a murder charge. English stated that despite wanting to testify and informing trial counsel of this desire, he did not testify based on trial counsel's advice. English indicated that he believes that if he had testified the jury would have found him not guilty of the charges. English felt that he did not have enough time to prepare for trial, and felt prejudiced before trial based on Bax's statements concerning English's skin color—statements which English's prior two attorneys had also made.

English also appears to indicate that Bax should have been more aggressive cross-examining a co-defendant whom English argues was not incarcerated but testified that he had a nine-millimeter at his house and identified himself on the video recording. English also appears to argue that trial counsel's cross-examination was insufficient based on the fact that a shotgun was introduced into evidence and a shotgun is visible on the video recording, but everyone, including the store clerk, is discussing the nine-millimeter weapon at trial, which the co-defendant appears to state was at the co-defendant's house.

Additionally, English testified that another co-defendant wrote a letter stating that all the co-defendants agreed to "place this case or place these charges on [English] so they could get out of trouble together." (App. at 310, ECF No. 24-3 at 6.) The State objected to trial counsel's attempt to show this co-defendant evidence obtained from the Lexington County jail records to possibly support this letter or otherwise impeach the co-defendant, and the objection was sustained. However, English argues that Detective Belk later testified about the same information his attorney was not permitted to admit into evidence and trial counsel failed to object to it.

Bax testified that he recalled meeting with English at least two or three times prior to trial, and in at least one of those meetings he introduced English to his co-counsel, Hahn.[7]  Bax indicated that in the first meeting with English he reviewed the charges, the maximum and minimum penalties for each charge, and English's constitutional rights, including his right to testify.  Bax testified about a plea offer that English did not accept. Bax also stated that the discovery was in the file when he began representing English, and during meetings with the prosecution he reminded them of their continuing duty to provide discovery.  Bax stated that he reviewed still photographs from the video recording with English and described the contents of the video recording, but he believed English did not view the video recording until he was transported to the courthouse prior to trial.  Bax also testified that the evidence in this case included multiple written statements from the co-defendants and witnesses as well as fairly extensive investigation notes from Detective Belk, all of which Bax stated he reviewed with English.  With regard to English's allegations regarding Bax's statements about his race, Bax testified that he informs all defendants in Lexington County that sometimes it can be difficult to get a lot of minorities on a jury in Lexington County but in English's case that was not his primary concern.  Bax indicated that his concern was the four co-defendants, all of whom had committed to testifying against English, and that their testimony all connected English to the individual with the nine-millimeter weapon which was in the store clerk's face during the robbery.

In conveying the plea offer,[8] Bax advised English that in his estimation English did not have a very good chance at trial but that Bax was more than happy to go to trial with English.  Bax also

---

[7] Hahn similarly testified that this meeting occurred, and that she did not get the impression it was Bax and English's first meeting.  Hahn also testified that her only active role in the trial was cross-examining the store clerk.

[8] Bax later stated that there were two plea offers, both of which Bax testified were conveyed to and rejected by English.



understood that it may be strategic to go to trial in this case to delay English's transportation to Florida where Bax was informed prosecutors were possibly going to seek the death penalty.

Bax testified that the only available trial strategy was attacking the credibility of the co-defendants. Bax stated that the co-defendants initially gave statements that extricated them from the situation, such as claiming lack of knowledge or being kidnapped, and that their stories changed as the case progressed. As each one decided to testify for the State and it became clear that English was going to trial, their stories changed as to culpability. Bax specifically stated that he "had to go through the fact that they had lied in multiple statements and that their testimony in the courtroom was self-serving, that it was different from prior statements, and that they were doing it in hopes of gaining some benefit, some escape from consequences." (App. at 323, ECF No. 24-3 at 19.) Bax indicated that the allegations were that a shotgun and handgun were used in the robbery, and while only the shotgun was introduced at trial,[9] the video recording and the store clerk's testimony indicate that a handgun was used. In fact, Bax stated that the store clerk was very specific about the handgun as it was "about six inches from his eyeballs." (App. at 325, ECF No. 24-3 at 21.)

Bax also provided additional information about English's allegations regarding the co-defendant's letter. Bax stated that the letter in question did indicate that the co-defendant lied about English's involvement and all the co-defendants planned before trial that "if it went bad," they were going to blame English who was not local to get themselves out of trouble. (App. at 326, ECF No. 24-3 at 22.) Bax stated he cross-examined the co-defendant about this letter, and the co-defendant testified that he lied in the letter and that his motivation was that he had originally planned on going

---

[9] During cross-examination, Bax also indicated that under "the hand of one is the hand of all" an objection to the introduction of the shotgun would be overruled and, based on South Carolina Supreme Court precedent, objecting on a preservation of error theory would similarly be unhelpful to English.



to trial with English and this letter was their strategy. Bax pointed out that during the prosecution's re-direct, the co-defendant stated his motivation was based on fear and fights. The information Bax subpoenaed from Lexington County Detention Center was information about inmate write-ups, disciplinaries, moves, or anything that would connect English and the co-defendant. The response revealed that there were no write-ups or room changes relating to the co-defendant's allegations and when he attempted to cross-examine the co-defendant with that record the State objected because the co-defendant was not the curator; however, Bax stated that he "got out what [he] needed to get out." (App. at 328, ECF No. 24-3 at 24.) Bax believed Detective Belk was questioned on whether all incidents are written-up and she said to her knowledge, even though she is not a correctional officer, not everything is written up. Bax cross-examined her on her lack of specific knowledge.

Finally, with regard to his advice on English's right to testify, Bax stated that he had a long discussion with English about it before trial, and at trial he told English it was English's decision but he did not think it was a good idea for several reasons. Bax appeared to express concern over English's rap sheet; the possibility of English being "tripped up" and saying something that could be argued against him or opening the door to questions about pending charges in Richland County that stemmed from the same night with the same modus operandi and the same actors; as well as the pending charges in Florida.[10] Even if the charges in Florida were not revealed, Bax believed that the idea that English was running from the law in Florida would be very damaging.

In summary, Bax also indicated that his cross-examination was somewhat limited since the co-defendants did not have offers or promises before trial for testifying; they were only told that

---

[10] Bax agreed that the any pending charges could not themselves be used to impeach English, but agreed that he could not say that English did not misunderstand his advice and interpret his advice to mean the pending charges would be admissible if he testified. However, Bax also stated that English did not indicate a lack of understanding.



something would be done for them. At the close of the PCR hearing, the PCR court pointed out that the trial judge explicitly reviewed English's right to testify and advised him that if he testified the solicitor could ask English about his conviction in 1999 for aggravated assault with a deadly weapon and armed robbery. The trial judge also stated that he would give the jury a curative instruction informing them that they can only consider that evidence against English, if they consider it at all, on the issue of whether his testimony is believable and for no other purpose.

After summarizing the applicable law and relevant testimony, the PCR court addressed each of English's allegations of ineffective assistance of trial counsel. The PCR court rejected each of them, finding that English was unable to demonstrate that trial counsel was deficient. Additionally, for several of the claims the PCR court found that English also failed to demonstrate any resulting prejudice.

Specifically, with regard to English's allegation that PCR counsel failed to impeach English's co-defendants after they purportedly made false statements, the PCR court found that English failed to meet his burden of proof. The PCR court found that "Counsel's testimony that he sought to impeach each co-defendant regarding their prior inconsistent statements and their desires to receive a benefit in exchange for their testimony to be credible, as this testimony is supported upon a review of the trial transcript." (App. at 370, ECF No. 24-3 at 64.) The PCR court also found English's testimony not to be credible.

Similarly, the PCR court found counsel's testimony credible and English's testimony not credible regarding English's allegations that trial counsel failed to meet with him and prepare for trial. The PCR court further credited trial counsel's testimony, which was bolstered by co-counsel's testimony, that he met with English on several occasions, during which they discussed the charges, English's version of the facts, the evidence, and possible trial strategies. Additionally, the PCR court



noted that even if English demonstrated that counsel was deficient in his preparation, English failed to introduce any evidence "of what additional preparation would have yielded, what additional evidence might have been found, or what additional witnesses might have been called on his behalf" and therefore, English could not demonstrate prejudice. (App. at 368, ECF No. 24-3 at 62.)

With regard to the entry of the video recording and shotgun into evidence during trial, the PCR court found that English failed to meet his burden of proof to demonstrate that counsel was ineffective in failing to object to these items. The trial transcript reveals, as the PCR court appears to have found, that trial counsel initially objected to the admission of the video recording into evidence as neither trial counsel or English had viewed the contents of the specific disc offered, and after further questioning as to its contents no further objection was made. (App. at 72, ECF No. 24-1 at 74.) The PCR court found that "[b]ecause the shotgun was used by one of [English's] co-defendants in the commission of a crime they committed together, it was relevant to [English's] guilt or innocence." (App. at 371, ECF No. 24-3 at 65.) The PCR court further found no resulting prejudice from the failure to object to the shotgun as the objection would have most likely been overruled.

The PCR court also found that English could not show that trial counsel was deficient in addressing the exculpatory note or any resulting prejudice. The PCR court found trial "[c]ounsel's testimony that he questioned the co-defendant about it and attempted to elicit that the note was written as a matter [of] trial strategy and not out of fear as the state suggested to be credible, as this testimony is corroborated by the trial transcript." (App. at 370, ECF No. 24-3 at 64) (citing App. at 183-85, ECF No. 24-2 at 33-35). The PCR court found English's testimony on this issue not credible.

Finally, with regard to trial counsel's advice concerning English's right to testify, the PCR court found that English failed to meet his burden of proof. Specifically, the PCR court stated the following:

> This Court finds Counsel's testimony that he advised the Applicant not to testify as a matter of trial strategy to be credible. This Court also finds Counsel's testimony that it was the Applicant's decision not to testify to be credible, as that testimony is supported by a review of the trial transcript. Prior to accepting the Applicant's decision not to testify, the trial judge held a colloquy with the Applicant in which he explained the benefits and drawbacks of testifying, as well as in what situations other offenses might be brought out. (Tr. p. 219, line 4 – p. 221, line 17).
>
> Accordingly, this Court finds that Counsel's advice not to testify was a matter of trial strategy. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Here, Counsel articulated valid strategic reasons for his advice to the Applicant. The Applicant has not shown that counsel was deficient in that choice of tactics. Further, this Court finds that the Applicant knowingly, intelligently, freely and voluntarily waived his right to testify.

(App. at 372-73) (internal case citations omitted).

### c.    English's Habeas Claims Regarding Ineffective Assistance of Counsel

Upon thorough review of the parties' filings and the record in this matter, the court finds that English cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting his claims of ineffective assistance of counsel or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785.



Upon careful review of the transcript and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that English has failed to establish that trial counsel's action were error, much less that they were objectively unreasonable such that it rendered trial counsel's performance deficient. Additionally, English has failed to demonstrate that there is a reasonable probability that the result of the proceeding would have been different if trial counsel had further impeached English's co-defendants; further consulted with English; objected to the shotgun, or made further objection to the video recording;[11] further address the exculpatory note; or advised English further on his right to testify. Strickland, 466 U.S. at 694. Moreover, English has not clearly shown that the credibility determination in the PCR court's order is without support.[12] See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)). Therefore, English has not shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410.

---

[11] It is unclear what additional objection English contends trial counsel should have made to the admission of the video recording. To the extent that it rests on English's argument that trial counsel failed to show him the video recording prior to the day of trial, the court observes, as did the PCR court, that English and trial counsel testified that English reviewed still photographs from the video recording with trial counsel. Trial counsel testified that in addition to reviewing the still photographs, he described to English the contents of the video recording.

[12] Although English appears to argue that PCR counsel should have impeached Bax regarding some of his statements, (see ECF No. 41 at 7), upon review of this argument the court finds it to be without merit. Moreover, it does not clearly demonstrate that the PCR court's credibility findings were without support.



E.    **Other Issues**

To the extent that English's Petition is construed as raising a claim of actual innocence, such a claim is not a cognizable ground for federal habeas relief.  See Herrera v. Collins, 506 U.S. 390, 404 (1993) (stating that a claim of actual innocence is not a freestanding claim cognizable on federal habeas review, but merely a "gateway through which a habeas petitioner must pass" to have an "otherwise barred unconstitutional claim considered on the merits").  Further, to the extent that English attempts to raise additional issues or grounds in his response, the court finds that these grounds are not properly before the court.  (See, e.g., ECF No. 41 at 4, 8) (appearing to allege that trial counsel was ineffective in failing to object to a portion of the solicitor's closing argument and in failing to move to suppress certain evidence and a freestanding claim that his Fourth Amendment rights were violated).  Additionally, to the extent that English argues that he should be excused from any procedural default on his claims pursuant to Martinez v. Ryan, 132 S. Ct. 1309 (2012), the court observes that although it finds some of English's claims to not be cognizable under federal habeas review, it does not find English's claims to be procedurally defaulted.  Therefore, analysis of this argument is unwarranted.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's supplemental motion for summary judgment (ECF No. 51) be granted and English's Petition be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 12, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).